UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | : | |
| | : | CRIMINAL CASE NUMBERS: |
| v. | : | |
| | : | 3:09-cr-00154-SRU-1 |
| STEVEN LOPEZ, | : | |
| *Defendant.* | : | June 5, 2018 |

## SENTENCING MEMORANDUM

Steven Lopez submits the following sentencing memorandum in support of his violation hearing scheduled for June 7, 2018.  The violation arises from a conviction for possession with intent to sell, in violation of Conn. Gen. Stat. § 21a-277(a).  On that charge, Mr. Lopez received a sentence of two years and one day of imprisonment.  Mr. Lopez also remains on special parole until May 13, 2025 as a result of a previous state conviction and likely faces additional imprisonment for violating special parole by committing a new criminal offense.  In light of these sentences, Mr. Lopez will request a sentence of time served with no supervision to follow on the federal violation.  This memorandum first addresses Mr. Lopez's history, characteristics, and offense conduct and then explains why the requested sentence is not greater than necessary to fulfill the purposes of sentencing relevant to a violation of supervised release.

## STEVEN LOPEZ'S
## HISTORY, CHARACTERISTICS, AND OFFENSE CONDUCT

The Court is no doubt familiar with Mr. Lopez's history, characteristics, and original offense conduct from the presentence report ("PSR").  But two aspects are worth discussing in greater detail here.  First, Mr. Lopez recalls his family "barely getting by" while he was growing up.  His father floated in and out of prison.  He was primarily raised by a mother on welfare, and bills were organized around pay day.  He and his siblings would sometimes go to bed hungry

1

because there wasn't enough food to eat.  When Mr. Lopez was ten years old, his family was evicted from their home in the Bronx and forced to relocate to the Betances Houses.  While living there, Mr. Lopez saw "blood, stabbings, and people being beaten at the projects."  He also recalls seeing gang violence, "people shoot[ing] up in broad daylight and syringes everywhere," and prostitutes slipping inside random cars.  Most notably, when Mr. Lopez was in junior high school, he saw someone get shot.  Recent research shows a significant link between experiencing this type of trauma and later incarceration.  *Have You Ever Seen Someone Be Killed?: A Single Data Point that Complicates How We Think About Who Is in Prison,* available at https://www.nytimes.com/2018/05/25/upshot/have-you-ever-seen-someone-get-killed.html

Mr. Lopez moved to Connecticut when he was fifteen years old.  Mr. Lopez describes his move to Waterbury as a "stress reliever" given that he was "scared to live in the projects and would [often] stay inside the house."   His father, however, remained in the Bronx.  His mother passed away several years later, when Mr. Lopez's youngest brother was only fifteen years old.  Her death put a great deal of strain on the family, and Mr. Lopez served as his younger brother's caregiver until his younger brother became of age.  Mr. Lopez and his brother have stayed close, as evidenced by his brother's letter of support.  Exhibit A (Francisco Lopez Letter).  Mr. Lopez's younger sister has likewise continued to support Mr. Lopez.  Exhibit B (Rosa Lopez).

In addition to the background as stated in the PSR, Mr. Lopez has made a number of accomplishments since being sentenced in 2010.  While incarcerated at the BOP, Mr. Lopez earned certificates in Culinary Arts, Prison to Paycheck, Employment Strategies, College Preparation, Business Etiquette, Dress for Success, and Ready to Work.  Exhibit C (BOP Certificates).  When Mr. Lopez was released from prison in 2015, he received numerous certificates relating to training in the construction industry.  Exhibit D (Construction Certificates).  He applied those skills wisely.

Shortly after being released into the community, Mr. Lopez began working for Elite Environmental Protection where he was in charge of demolition work and cleaning asbestos.  He earned $16.50 an hour and was a full time employee.  After several months working there, he switched jobs and began working for Northern Pipeline Construction in Woodbridge, CT.  His job was to install gas services, and he earned $18.40 an hour and was a full time employee, often working overtime.

Mr. Lopez's career in construction, however, came to an end in February 2016 when he became involved in a car accident.  His injuries required six months of care, and despite treatment, he "continues to have ongoing residual symptoms which are consistent with his motor vehicle accident injuries."  Exhibit E (Chiropractor Records Excerpt).  But despite his injuries, Mr. Lopez enrolled in a cosmetology course in March 2016.  Mr. Lopez excelled in this program:

> Steven was a motivated student who was very eager to learn everything he could through his own experiences and from his peers and educators. Steven has personally touched the hearts of all of the staff here. Steven was always the first one to go out of his way to lend a helping hand to another student having a difficult time learning a haircut or to an instructor who was looking for someone to take a client. His academic grades and his practical grades were always 90's to 100's. To this day, he remains one of our top students when it comes to barbering as well as cosmetology. We aspire to have all of our students performing at the unprecedented level the Steven always displayed.

Exhibit F (Cosmetology Letters).  He received numerous certificates, *see* Exhibit G (Cosmetology Certificates), and truly enjoys this type of work, *see* Exhibit H (Cosmetology Pictures).

In addition to these skills, Mr. Lopez has also used his time of supervised release to make strides in other areas of his life.  He has reconnected with his children and strives to be a better father.  Exhibit I (Natalia Lopez Letter).  He has engaged in substance abuse counseling.  Exhibit J (Substance Abuse Certificate).  And most importantly, he has begun the process of coming to the terms with the trauma in his life.  Exhibit K (Bender Letter).  This includes not only the effects of his childhood trauma but the compounded effects of two lengthy period of imprisonment.  *See*

Craig Haney, *The Psychological Impact of Incarceration: Implications for Post-Prison Adjustment* (December 2001), available at https://aspe.hhs.gov/basic-report/psychological-impact-incarceration-implications-post-prison-adjustment.  He continues to seek treatment for his PTSD even in custody.  Exhibit L (DOC Records Excerpt); Exhibit M (Mueller Letter).

Unfortunately, Mr. Lopez was arrested in June 2017, and he has been in state custody since that time.  While in custody, Mr. Lopez has developed a mass on his neck, which the Department of Corrections will not treat with surgery.  Exhibit N (DOC Records Excerpt).  On his new state charge, Mr. Lopez received a sentence of two years and one day of imprisonment.  Moreover, as a result of a previous state conviction, he will remain on special parole until May 13, 2025.  His date of his re-release to special parole (which there is no guarantee of) will not be determined by parole board until after sentencing on the federal violation.  However, when Mr. Lopez is released, he plans to finish cosmetology school, to "network and get to know people in the barbering business," attend hair showcasing, and learn how to style women's hair.  His recent time in prison, where he was held in a special until for individuals with mental health and substance abuse problems, has shown him the first-hand effects of drug abuse from hard drugs.  It has allowed him to connect his criminal conduct with the harm it has caused others.[1]  In conversations with undersigned counsel, he has expressed sincere remorse and a sincere desire to change not only for himself, but for his family and his community.  *See also* Exhibit O (Steven Lopez Letter).

---

[1] While Mr. Lopez never abused hard drugs, he did abuse alcohol, frequently drinking to the point where he would blackout.  He has sought substance abuse treatment both on supervised release and while in prison.

**DISCUSSION**

When a defendant violates supervised release, the district court may, after considering the sentencing factors set forth in Sections 3553(a)(1), (a)(2)(B), (a)(2)(C), (a)(2)(D), (a)(4), (a)(5), (a)(6), and (a)(7), revoke supervision and resentence the defendant to prison.  18 U.S.C. § 3583(e). In determining the appropriate sanction, a sentencing court must also consider the seriousness of the violation but need not consider "respect for the law" and "just punishment" because Congress omitted those purposes of sentencing from Section 3583(e).  *United States v. Williams*, 443 F.3d 35, 48 (2d Cir. 2006) ("It may be possible for the court, in considering these factors and the other factors adverted to in § 3583(e), to avoid considering a need to promote respect for the law and a need to provide just punishment for the offense, which, along with the seriousness of the offense, are the factors set out in § 3553(a)(2)(A).").  Several circuits have ruled that placing undue weight on "respect for the law" or "just punishment" or treating them as dominant factors constitutes reversible error.  *United States v. Lee*, 650 F. App'x 948, 952 (10th Cir. 2016) (summarizing Circuit authority).

Mr. Lopez faces an advisory Guidelines range of 18 to 24 months' imprisonment, resulting from a Grade B violation and previous Criminal History Category of V, which the Guidelines recommend to be run consecutively to the underlying state offense.[2]  *See* U.S.S.G. §§ 7B1.3(f), 7B1.4.  A sentence of time served with no supervision to follow, however, better addresses the

---

[2] Mr. Lopez's conviction for possession with intent to sell, in violation of Conn. Gen Stat. 21a-277(a), does not establish a Grade A violation.  *Cf. Harbin v. Sessions*, 860 F.3d 58, 61 (2d Cir. 2017) (holding that NY fifth-degree sale of a controlled substance is not a controlled substance offense under immigration laws because the statute criminalizes more drugs than federal law and the type of drug was not an element of the crime); *United States v. Madera*, 521 F. Supp. 2d 149, 157 (D. Conn. 2007) ("Connecticut bans substances that are not federal controlled substances.").  Even if the government or probation provides a basis for disagreement, the Court need not resolve the issue.  *See United States v. Dhafir*, 577 F.3d 411, 415 (2d Cir. 2009) (holding that sentencing court is not required to determine the Guidelines range when it will not alter the outcome).

purposes of sentencing relevant to a violation for three reasons.  First, the state sentences are sufficiently severe to address the relevant purposes of sentencing.  Second, Mr. Lopez's physical and mental health problems will be better addressed in the community.  Third, the sentence appropriately considers Mr. Lopez's achievements since being sentenced in the original federal case.  These three arguments are addressed in turn.

**1.      The State Sentences Are Sufficiently Severe to Address the Relevant Purposes of Sentencing.**

Mr. Lopez faces a lengthy period of imprisonment, supervision, or both no matter the outcome of this violation.  On his new state case, Mr. Lopez has received a sentence of two years and one day of imprisonment.  But Mr. Lopez will likely not be released after completing that sentence because he also awaits sentencing on a special parole violation, which the parole board does not consider until the federal sentence is imposed.  At that hearing, the parole board could hold Mr. Lopez in custody until 2025.  And even if he is re-paroled to special parole before the expiration of his special parole term, he will be supervised until 2025 and subject to reimprisonment on a finding of probable cause of any instance of misconduct.

Additional imprisonment, supervision, or both is unnecessary in light of these sentences. As to just punishment, and respect for the law, these purposes of sentencing need not be considered by this Court.  But even if they are considered, there is no need for additional imprisonment or supervision because Mr. Lopez will be serving a criminal justice sentence for the next eight years. *Cf. United States v. Aldeen*, 792 F.3d 247, 252 (2d Cir. 2015), as amended (July 22, 2015) ("Supervised release is not, fundamentally, part of the punishment; rather, its focus is rehabilitation.").  Moreover, a longer sentence would have no effect on general deterrence. *See* Michael Tonry, *Purposes and Functions of Sentencing, 34 Crime and Justice: A Review of Research* 28–29 (2006) ("[I]ncreases in severity of punishments do not yield significant (if any)

marginal deterrent effects. . . . Three National Academy of Science panels, all appointed by Republican presidents, reached that conclusion, as has every major survey of the evidence.").  The community will be sufficiently protected because Mr. Lopez will incarcerated or supervised until his early 40s.  And, when he is eventually released, Mr. Lopez is committed to beginning a new career in cosmetology and turning his life around.  As to the final purpose of sentencing, that is, rehabilitation, incarceration serves no valid rehabilitative purpose. 18 U.S.C. § 3582(a) ("[I]mprisonment is not an appropriate means of promoting correction and rehabilitation.").

**2.    Mr. Lopez's Physical and Mental Health Problems Will Be Better Addressed in the Community.**

As discussed above, Mr. Lopez suffers from PTSD, back pain, and a mass on his neck that has grown since being incarcerated in June 2017.  While Mr. Lopez is being given medication and therapy to treat his PTSD in prison, he would receive better treatment in the community. According to one scholar,

> The amount of information regarding the inadequacy of the BOP in treating mentally ill prisoners is overwhelming. In 2006, the federal inmate population has been estimated to hold 70,200 individuals with a history of mental illness issues. Mental Health America instructs that "there is now widespread concern regarding the unmet needs of persons with mental illness in the nation's jails and prisons and the toll it exacts on these individuals, their families, service agencies, and the criminal justice system.

Natalie Hinton, *Curing the BOP Plague with Booker: Addressing Inadequate Medical Treatment in the Bureau of Prisons*, 41 J. MARSHALL L. REV. 219, 234–35 (2007) (generally arguing that "[federal] [j]udges must realize the devastating effects a sentence of imprisonment has on a physically or mentally ill defendant, and use the sentencing discretion granted under Booker to provide effective medical treatment for these individuals").  Moreover, as discussed above, imprisonment can exacerbate PTSD symptoms.  *See* Haney, T*he Psychological Impact of Incarceration: Implications for Post-Prison Adjustment*. Similarly, Mr. Lopez is not receiving

adequate treatment for the mass growing on his neck.  Both Mr. Lopez's physical and mental health problems are thus reasons to impose the requested sentence.  *See* U.S.S.G. § 5H1.4 ("In the case of a seriously infirm defendant, home detention may be as efficient as, and less costly than, imprisonment."); *United States v. Park*, 753 F.3d 193, 198 n.19 (2d Cir. 2014) (citing Section 5H1.4 as "the only Guidelines provision which seems to allow departures on the basis of cost").

**3.     Third, the Requested Sentence Appropriately Considers Mr. Lopez's Recent Achievements.**

While Mr. Lopez will admit to engaging in criminal conduct on supervised release, his criminal conduct should not overshadow a number of other positive developments in his life.  As discussed above, he participated in numerous programs in the BOP and the DOC.  He has engaged in treatment for his physical and mental health problems.  He held stable, full-time employment for over a year before suffering from a back injury.  When his career in construction was no longer feasible, he attempted to switch careers and received new training that will help prevent him from engaging in criminal conduct to support himself.  He is only 52 hours away from completing that training.  In short, Mr. Lopez should be given credit for the things that he got right on supervision and incentivized to engage positive, law-abiding conduct in the future.

**CONCLUSION**

For the reasons stated above, Mr. Lopez respectfully requests a sentence of time served with no supervision to follow.

8

Respectfully Submitted,


THE DEFENDANT,
Steven Lopez

FEDERAL DEFENDER OFFICE


Date: June 05, 2018                    /s/ Ross Thomas
                                       Assistant Federal Defender
                                       10 Columbus Blvd, 6th FL
                                       Hartford, CT 06106
                                       Phone: (860) 493-6260
                                       Bar No.: phv08740
                                       Email: ross_thomas@fd.org


CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on June 05, 2018, a copy of the foregoing memorandum and exhibits were filed electronically and served by mail on anyone unable to accept electronic filing. Notice of this filing will be sent to all parties by operation of the Court's electronic filing system or by mail to anyone unable to accept electronic filing as indicated on the Notice of Electronic Filing. Parties may access this filing through the Court's CM/ECF System.


                                       /s/ Ross Thomas
                                       Ross Thomas